## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| OMAR CARRILLO, | ) | |
| | ) | |
| Plaintiff, | ) | No. 09 C 2803 |
| | ) | |
| vs. | ) | Judge Kennelly |
| | ) | Magistrate Judge Ashman |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S RESPONSE TO DEFENDANTS'
### MOTION FOR SUMMARY JUDGMENT

Plaintiff, Omar Carrillo, through counsel, Jackowiak Law Offices, responds to Defendants' motion for summary judgment as follows:

**Introduction**

Plaintiff Omar Carrillo has been arrested two times on a warrant for a man named "Omar Bucio." Bucio uses at least seven different aliases. Plaintiff has twice been jailed and forced to appear before a judge on Omar Bucio's case. In both instances, Plaintiff received a court order instructing law enforcement not to arrest Plaintiff on Omar Bucio's warrant.

The Defendants in this case pulled Plaintiff over without probable cause. They questioned Plaintiff about the warrant for Bucio. Plaintiff presented a valid court order stating that he was not to be arrested for Bucio's case again. Defendant-Officers told Plaintiff that the order was meaningless. They confiscated it, hid it from other officers and never returned it. Meanwhile, Bucio was already in jail. A photo of Bucio was available, but Defendants never looked at it.

The Defendants simply arrested Plaintiff, charged him on Bucio's case, and shipped him to Cook County Jail. The Defendant-Officers had a vast amount of information available to them that would have shown Plaintiff was not the man they wanted. They deliberately ignored that information. Defendants' motion for summary judgment should be rejected.


**Defendants are not Entitled to Judgment on Plaintiff's Unreasonable Seizure Claim**

Defendants argue that they are entitled to judgment on Plaintiff's unreasonable seizure claim because Plaintiff "admitted" violating several traffic laws at the intersection of 67th and

Damen. That assertion is false. During Plaintiff's deposition, Defendants' counsel suggested that Plaintiff committed various acts that may have constituted traffic violations, but Plaintiff disagreed with counsel that he committed these acts.

First, Defendants allege that Plaintiff failed to accelerate when a traffic light turned green. They argue this violated a law that prohibits disobeying a traffic signal, a law that prohibits impeding the normal movement of traffic and a municipal ordinance which prohibits "willfully and unnecessarily" hindering the movement of other people driving on a public street. Counsel insisted that Plaintiff did not properly accelerate at a traffic signal, but during his deposition, Plaintiff specifically denied doing that. Plaintiff testified as follows:

> *Counsel*: Did you brake at all? You're not braking to stop and see if you can turn?
> *Plaintiff*: ... I just gave it gas and ... just drove across the street. Just went straight.

[SOF, ¶ 4; Response to Defendants' SOF, ¶ 22.]

> *Plaintiff*: I wanted to make a right turn. But when I was [stopped at the red light] I seen the cop and I'm pulling up, so I just kept on going straight.

[SOF, ¶ 4; Response to Defendants' SOF, ¶ 22.]

This alleged violation is further called into question by the fact that Defendant-Officers did not ticket Plaintiff for blocking traffic or failing to accelerate.

Next, Defendants allege that Plaintiff violated laws and ordinances by turning his wheel to the right as if to make a turn before crossing 67th Street thereby crossing the lane boundary in violation of another municipal code. However, Plaintiff specifically denied doing that as well.

> *Counsel*: You were going to make the right turn and then you keep going straight but you make no motions to even try to make the right turn initially?
> *Plaintiff*: No, I don't.

[SOF, ¶ 5; Response to Defendants' SOF, ¶ 23.]

> *Counsel*: ... You're kind of starting to turn your wheel, and then you realize, wait a minute, there's cop cars, I'm going to keep going straight. That's what's going on in your mind?
> *Plaintiff*: I pulled up a little bit. I didn't turn the wheel.

[SOF, ¶ 5; Response to Defendants' SOF, ¶ 23.]

What really happened is fairly obvious. The Defendants in this case are tactical officers. That morning, they were involved with an undercover drug sting. Tactical officers do not typically waste their time making stops for what even they characterize as very minor driving violations. Defendant-Officer Kuc testified that she didn't know whether Plaintiff even violated

2

the law, but just thought they should stop Plaintiff to see if he was "lost, maybe sick." [SOF, ¶ 8.]

At the time of this stop, Defendants had just picked up tacos for their sergeant and co-workers and were going back to the 7th District with lunch. [SOF, ¶ 7.] They were not going to waste 15 minutes seeing if Omar Carrillo was "lost, maybe sick." What really happened was that the Defendants were driving behind Plaintiff and ran his license plate number. They discovered a possible warrant—the warrant for Omar Bucio—and decided to stop Plaintiff for that. Kuc admits that the officers may have run Plaintiff's plates before pulling him over. [SOF, ¶ 2.] The problem was that Defendants lacked probable cause to stop Plaintiff, so they came up with various alleged traffic violations to justify the stop. Plaintiff denies that any violations ever happened. Not surprisingly, the tickets were all dismissed. [Defendants' SOF, ¶ 43.]

The facts that Defendants argue gave them cause to stop Plaintiff for alleged traffic violations are disputed, and Plaintiff is entitled to trial on his unreasonable seizure claim.

**Defendants Are Not Entitled to Judgment on Plaintiff's False Imprisonment Claim**

Next Defendant-Officers argue that summary judgment is proper because they had probable cause to arrest and charge Plaintiff on Omar Bucio's warrant. This argument lacks merit and should be rejected.

It is well established that the Constitution is violated when an individual is detained pursuant to a warrant which the officer knew or *should have known* did not apply to the detainee. See Perez-Garcia v. Village of Mundelein, 396 F.Supp. 907 (N.D.Ill. 2005) (denying a motion to dismiss a complaint which alleged that the Plaintiff was held pursuant to a warrant that did not apply to him); Sivard v. Pulaski County, 959 F.2d 662, 668 (7th Cir.1992) (continued detention of the plaintiff states a claim under § 1983 if the sheriff knew it was wrongful); Sanders v. English, 950 F.2d 1152, 1162 (5th Cir.1992) (failure to release a pretrial detainee after police officer knew or should have known that plaintiff had been misidentified gives rise to § 1983 action); Johnson v. City of Chicago, 711 F.Supp. 1465, 1470 (N.D.Ill.1989); Patton v. Przybylski, 822 F.2d 697 (7th Cir. 1987); Armstrong v. Squadrito, 152 F.3d 564 (7th Cir. 1998).

Here, Defendants did not, as they contend, "reasonably mistake" Plaintiff for Bucio. Rather, they deliberately concealed the evidence that showed that Plaintiff was not the man wanted on Bucio's warrant. The Defendants should have known that Plaintiff was not Bucio long before they sent him to Cook County Jail. As soon as Defendants mentioned to Plaintiff that

there was a possible warrant for his arrest, Plaintiff presented the Defendant-Officers with a court order from the Circuit Court of DuPage County. [SOF, ¶ 9.] The case number on the warrant for Bucio is identical to the case number on Plaintiff's court order. [SOF, ¶¶ 9, 10.] This order showed that Plaintiff had been arrested on Bucio's case before and clearly instructed law enforcement that Plaintiff was not the defendant in Bucio's case and should not be arrested on that case number again. [SOF, ¶ 9.] Instead of confirming the validity of this court order, Defendant Swiatkowski confiscated and hid the order, told Plaintiff it was meaningless, and threatened to hit Plaintiff when he tried to tell other officers about it at the police station. [SOF, ¶¶ 11, 17, 18.] On those facts, Defendants are not entitled to summary judgment.

Furthermore, Defendants' contention that Plaintiff's information matched Bucio's is also baseless. Defendants insist throughout their brief and statement of facts that Bucio was also known as "Omar Carrillo," which gave the Defendant-Officers reason to believe that Plaintiff was the man wanted on the warrant. However, that contention is not supported by the evidence. The LEADS response for Bucio shows that Bucio has used seven different names. Not one of them matches Plaintiff's name. [SOF, ¶ 23.] Plaintiff was arrested and charged as "Omar D. Carrillo," the name that appears on his state ID card. "Omar Carrillo," "Omar D. Carrillo," and "Omar Daniel Carrillo" are not among the many names listed on the warrant for Bucio. [Response to Defendants' SOF, ¶ 6.] In that way, this case is fundamentally different from Brown v. Patterson, 823 F.2d 167 (7th Cir. 1987) and Tibbs v. City of Chicago, 469 F.3d 661 (7th Cir. 2006), on which Defendants rely in support of their motion. In both of those cases, the individual mistakenly arrested had a name identical to one listed on the warrant. Moreover, none of the cases cited by Defendants involved an allegation similar to that at issue in this case—that the officer was presented with a court order that showed the person arrested was not the individual wanted on the warrant.

Furthermore, the LEADS response for Bucio showed that Bucio had three tattoos: one on his abdomen that says "Bucio" and one on each arm. [SOF, ¶ 12.] While still out on the street, Defendant-Officer Swiatkowski asked Plaintiff if he had these tattoos. Plaintiff showed Defendants that he didn't. [SOF, ¶ 12.] Defendants ignored this significant physical discrepancy as well.

It is important to note that the Defendant-Officers did not just briefly detain Plaintiff to investigate whether he was Bucio. Rather they summarily arrested Plaintiff, charged him on

Bucio's warrant, and shipped him to Cook County Jail. Under these circumstances, it cannot be determined as a matter of law that Defendant-Officers acted reasonably when they arrested Plaintiff on Bucio's warrant.

**Defendants had a Duty to Investigate Further**

The Seventh Circuit has held that "it is incumbent upon law enforcement officials to make a thorough investigation and exercise reasonable judgment before invoking the awesome power of arrest." Moore v. Marketplace, 754 F.2d 1336, 1345-46 (7th Cir. 1985) (reversing summary judgment). The leading Seventh Circuit case addressing failure to investigate is BeVier v. Hucal, 806 F. 2d 123 (7th Cir. 1986), in which the Court held: "A police officer may not close his or her eyes to facts that would help clarify the circumstances of the arrest. Reasonable avenues of investigation must be pursued ...." Id., at 128. Under BeVier, Plaintiff is entitled to a trial on his claim of false arrest. Plaintiff never would have been sent to jail if Defendants had fulfilled their obligation to conduct a reasonable investigation before arresting Plaintiff and charging him on Bucio's warrant. But they didn't even try to do so.

In BeVier, the Seventh Circuit upheld a jury verdict against a police officer who was alleged to have falsely arrested two parents for child neglect. When the officer made the arrest, he knew that the couple's children were in direct sunlight on a very hot day, they were filthy and living near machinery and livestock, and one child had a severe diaper rash for which he had been hospitalized. BeVier, 806 F.2d at 126. The Seventh Circuit upheld the jury's finding that it was unreasonable for the Defendant-Officer to make the arrest without first questioning the parents, the medical personnel who had recently treated the baby, and the babysitter. If the officer had done so, he would have learned that the parents had given the babysitter proper instructions about caring for their child, that they bathed their children regularly, and they were treating the baby's diaper rash with medication. Id. at 127.

In this case, if Defendants had conducted even the most cursory investigation, they would have learned in a matter of seconds that Plaintiff was not the person wanted on this warrant. First, and most importantly, Plaintiff gave Defendants a valid court order stating that Plaintiff had previously been arrested on this exact case number and was not to be arrested on this case again. Defendant Swiatkowski's search of the LEADS system confirmed that Plaintiff had indeed been arrested on this warrant before and subsequently released. [SOF, ¶ 16.] If the Defendants had called

5

DuPage County, they could have confirmed that the court order Plaintiff provided them was valid.

If the Defendants had run Plaintiff's fingerprint, they would have seen that it didn't match Bucio's. If the Defendants had pulled up a photo of Bucio (which was available in their own computer system) they would have seen that Bucio looks nothing like Plaintiff. [SOF, ¶ 19, 25.] The LEADS system also showed that Bucio was already in prison, and had been since October 2007. [SOF, ¶ 22.] If they had run a simple Google search, they would have found the real Bucio in seconds. [SOF, ¶ 21.]  They didn't do anything. Instead, they deliberately concealed Plaintiff's court order—the readily available evidence that they had the wrong person—and charged Plaintiff on the warrant anyway. This was unconstitutional. See, e.g., BeVier, 806 F. 2d at 128; Stokes v. Board of Education, — F.3d —, 2010 WL 986639 at *6 (7th Cir. 2010) (officer may not "close his or her eyes to exculpatory facts").


**Defendants Are Not Entitled to Qualified Immunity**

Defendants next contend that even if they lacked probable cause to arrest Plaintiff on Omar Bucio's warrant, they are entitled to qualified immunity because they reasonably believed they had probable cause. As explained above, this is not a simple case of a reasonable mistaken identity. Rather, Defendants deliberately disregarded and concealed evidence that showed that Plaintiff was not Omar Bucio and should not be arrested on Bucio's warrant. Of course, it was clearly established at the time of this arrest that officers may not deliberately hide exculpatory evidence. Defendants qualified immunity argument fails. See, e.g., Dominguez v. Hendley, 545 F.3d 585, 589 (7th Cir. 2008) ("There was and is no disputing that" withholding exculpatory evidence "violates clearly established constitutional rights.")

Defendants also argue that they are entitled to qualified immunity because Plaintiff was "driving on a ticket." In support of this argument, Defendants rehash the position asserted in their motion to dismiss that Defendants were entitled to arrest Plaintiff because he presented a traffic citation in lieu of a drivers' license. As the Court explained in ruling on Defendants' previous motion, this argument defies logic and common sense:

> No reasonable officer could conclude that it is appropriate to arrest a driver
> for failure to present a valid license when he presents a ticket that was issued by a
> police officer with the commonly held understanding, encouraged by the authorities
> and confirmed by the law, that he could use the ticket as a temporary license.

Dkt. 38, p. 7, citing, United States v. McGuire, 957 F.2d 310, 312 (7th Cir. 1992); United States v.

Cardona-Rivera, 904 F.2d 1149, 1152 (7th Cir. 1990); <u>Golden v. City of Chicago</u>, No. 07 C 6928, 2009 WL 3152359, at * 1 (N.D. Ill. Sept. 28, 2009); <u>People v. Cannon</u>, 18 Ill. App. 3d 781, 784, 310 N.E.2d 673, 675 (1974); <u>United States v. Bingham</u>, No. 03 CR 1158, 2004 WL 1336384, at *3 (N.D. Ill. June 14, 2004).

Defendants are not entitled to qualified immunity based on the disputed facts of this case.

**Defendants Are Not Entitled to Judgment on Plaintiff's Substantive Due Process Claim**

A substantive due process claim is available when the conduct complained of was an "arbitrary abuse of government power that shocks the conscience." <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 846-47, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998); <u>Tun v. Whitticker</u>, 398 F.3d 899, 902 (7th Cir. 2005).

Here, Plaintiff's substantive due process claim is founded on the fact that Defendants concealed and deliberately disregarded a court order which instructed them that Plaintiff was not the person wanted on the warrant for Omar Bucio. Plaintiff tried to inform other officers at the police station that the Defendants had confiscated the court order that demonstrated he was not the man wanted on Bucio's case. [SOF, ¶ 17.] In response, Defendant Swiatkowski raised his fist and threatened to punch Plaintiff. [SOF, ¶ 18.] As a result, Plaintiff was arrested, incarcerated, and had to post $500.00 bond to get out of Cook County Jail. Meanwhile, the Defendants knew that Plaintiff was not the person wanted on Bucio's warrant. Such actions by state actors constitute an arbitrary abuse of government power and thus a violation of Plaintiff's due process rights guaranteed by the Fourteenth Amendment. <u>See, e.g.</u>, <u>Ienco v. City of Chicago</u>, 286 F.3d 994, 999 (7th Cir.2002) (allowing plaintiff to amend complaint to assert due process claim against police officers who withheld evidence); <u>Jones v. Chicago</u>, 856 F.2d 985 (7th Cir.1988) (allowing claim against officers who allegedly fabricated evidence and concealed exculpatory evidence to go forward).

**Defendants are not Entitled to Judgment on Plaintiff's Willful and Wanton Claim**

Defendants argue that Plaintiff's state claim for willful and wanton conduct should be dismissed. Defendants do not make any new arguments in support of this contention. They simply contend that this claim fails for the same reason that Plaintiff's false arrest claim fails.

Of course, if a jury accepts Plaintiff's version of events at trial, the evidence would be more

7

than sufficient to support a finding that Defendants' conduct exhibited "utter indifference to or conscious disregard for" Plaintiff's rights. Plaintiff contends that Defendants fabricated bogus traffic violations to justify pulling him over, falsely arrested and charged Plaintiff on a warrant that they knew did not apply to Plaintiff, and deliberately ignored and covered up evidence that they had the wrong person.

Finally, even if the court were to find that Plaintiff's federal claims failed, the proper course of action would be to relinquish jurisdiction over Plaintiff's state law claims. See, Carr v. CIGNA Sec. Inc., 95 F.3d 544, 546 (7th Cir.1996) ("The general rule, when the federal claims fall out before trial, is that the judge should relinquish jurisdiction over any supplemental ... state law claims in order to minimize federal judicial intrusion into matters purely of state law.")

**_Respondeat_ Superior and Indemnification**

Of course, Defendants are correct that if all of Plaintiff's claims against the Defendant-Officers are dismissed, his _respondeat_ superior and indemnification claims would also fail. However, if any of Plaintiff's claims survive this motion, so too should his _respondeat_ and indemnification counts.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court deny Defendants' motion for summary judgment in its entirety.

Respectfully submitted,

/s/ Adele D. Nicholas
_Counsel for Plaintiff_

Lawrence V. Jackowiak
Adele D. Nicholas
Jackowiak Law Offices
20 North Clark Street, Suite 1700
Chicago, Illinois 60602
(312) 795-9595