IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OMAR CARRILLO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 09 C 2803 |
| ) | |
| CITY OF CHICAGO, BRIAN ) | |
| SWIATKOWSKI, and LAURA KUC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Omar Carrillo has sued the City of Chicago and Chicago police officers Brian Swiatkowski and Laura Kuc. Carrillo asserts claims of unreasonable seizure, false arrest and imprisonment, violation of substantive due process, and willful and wanton conduct. He seeks to hold the City liable under the doctrine of *respondeat superior* on the state law claims and for statutory indemnification of the officers on all of the claims against them. The defendants have moved for summary judgment. For the reasons stated below, the Court grants defendants' motion in part and denies it in part.

### Facts

On December 9, 2008, Swiatkowski and Kuc stopped Carrillo for an alleged traffic violation while he was driving on South Damen Avenue in Chicago. When the officers asked for Carrillo's driver's license, he informed them that he was "driving on a ticket," and he presented the ticket and his state-issued identification card. The officers checked Carrillo's name via computer and found an arrest warrant for a man named

Omar Bucio that listed several aliases, including Omar Busio Carrillo, Omar Bucio-Carrillo, and Omar Carrillo-Bucio. The officers told Carrillo about the warrant. Carrillo says he gave the officers an order from a DuPage County circuit judge stating that he was not to be arrested on the warrant in question. According to Carrillo, the officers took the court order from him, tore it up, and made disparaging comments about it.

Despite Carrillo's repeated pleas that he was not the person named in the warrant, the officers transported him to the police station. The officers checked the LEADS database and verified the warrant was active. They proceeded to process Carrillo, and other officers later transported him to the Cook County Jail. Jail personnel released Carrillo the next day after he post bond. He then appeared before a judge in DuPage County, who released Carrillo and entered an order stating that he was not to be arrested on the warrant again. Carrillo then filed this suit.

The Court will discuss other facts as necessary below.

**Discussion**

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). Summary judgment is appropriate "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). When considering a motion for summary judgment, the court views the evidence and draws reasonable inferences in the light most favorable to the nonmoving party. See *Scott v. Harris*, 550 U.S. 372, 378 (2007).

2

### A. Unreasonable seizure claim

Carrillo's first claim is that Swiatkowski and Kuc unreasonably stopped his car in violation of his Fourth Amendment rights. It is undisputed that temporary detention of a person during the stop of an automobile is a seizure within the meaning of the Fourth Amendment. *See Delaware v. Prouse*, 440 U.S. 648 (1979). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996).

Defendants contend that Carrillo committed traffic violations that justified the stop. Specifically, they say that while driving north on South Damen, Carrillo stopped at a traffic light at the corner of 67th Street. After the signal turned green, defendants say, Carrillo did not accelerate but instead just released his brake and then started to make a right turn onto 67th Street. Carrillo did not complete the turn, defendants say, but rather straightened out his wheel and continued to travel north on South Damen.

This, defendants contend, gave the officers probable cause to believe that Carrillo had violated four traffic laws. The first, 625 ILCS 5/11-305, says that a driver "shall obey the instructions of any official traffic-control device" unless otherwise instructed by a police officer. According to defendants, Carrillo disobeyed the light by failing to accelerate after it turned green,. The second law, 625 ILCS 5/11-606, prohibits a person from driving "at such a slow speed as to impede or block the normal and reasonable movement of traffic"; the third, Chicago Municipal Code § 9-08-150(b), prohibits willful and unnecessary hindrance, obstruction, or delay of traffic "so as to interfere with the effective movement of traffic." Defendants contend that Carrillo's slow

acceleration contravened these laws.  Finally, defendants argue that by starting to turn onto 67th Street, Carrillo crossed a lane boundary in violation of Chicago Municipal Code § 9-08-180, which says that when there are marked traffic lanes, a driver cannot fail to keep his vehicle within the designated boundaries except when lawfully passing another vehicle.

The problem with defendants' argument is that it requires reading Carrillo's testimony in the light most favorable to defendants, which is the opposite of what the law requires on a motion for summary judgment.  Carrillo testified that when the light changed, he "pulled not even, you know, five feet" and then realized there were police cars blocking 67th Street, "so I kept going straight.  As soon as I barely got to crossing [67th Street], that's when the lights go on and they pulled me over."  Carrillo Dep. 74.  A bit later in his deposition, Carrillo specifically *denied* initiating a right turn.  He said, "I just pulled up a little bit.  I didn't make the official right turn.  I just pulled up and I noted that it was two squad cars blocking the street.  So I just kept going straight." *Id.* 79-80.  When asked, "Did you turn your car at all towards the street,?" Carrillo replied, "not, barely, barely, you know, two inches did I turn the steering wheel just to see, and I noticed it was squad cars there.  So I kept going straight.  I didn't like swerve and then, you know, come back into the lane. . . .  I pulled up a little bit just because I wanted to make a turn, and then I noticed it was copes there, so I went straight."  *Id.* 80.

Viewing this testimony in the light most favorable to Carrillo, which is what the Court must do at this juncture, there are genuine issues of fact that preclude summary judgment.  Carrillo absolutely does not admit crossing any sort of lane boundary, even by a little bit, and if his testimony about momentarily turning his steering wheel "two

4

inches" is viewed in the light most favorable to him, there was no basis for a reasonable officer to believe that he improperly crossed a lane boundary. Nor, if the evidence is viewed in the light most favorable to Carrillo, was there information suggesting that he was in any way hindering, impeding, or obstructing the traffic behind him for the second or two that he hesitated. Finally, Carrillo testified that when the light changed to green he took his foot off the brake, and then, after a second or two, accelerated. This is a far cry from the case defendants cite, *People v. Kelly*, 344 Ill. App. 3d 1058, 1061-62, 802 N.E.2d 850, 853 (2003), in which the defendant delayed twenty seconds at an intersection after the light turned green.[1]

For these reasons, defendants are not entitled to summary judgment with respect to the initial stop of Carrillo's vehicle and the detention of him up to the time the officers learned of the warrant.

**B.    False arrest/imprisonment claim**

Carrillo's second claim concerns his arrest and detention pursuant to the warrant. "When police officers mistake a person for someone they seek to arrest, the arrest is constitutional if the officers (1) have probable cause to arrest the person sought, and (2) reasonably believe that the person arrested is the person sought." *Catlin v. City of Wheaton*, 574 F.3d 361, 365 (7th Cir. 2009). Because Carrillo does not dispute that there was probable cause to arrest the person named in the warrant, the issue for summary judgment purposes is whether a reasonable jury could find that the

---

[1] Indeed, the court in *Kelly* made it clear that the statute gives a driver a reasonable period of time to react to a signal change. *Kelly*, 344 Ill. App. 3d at 1062, 802 N.E.2d 853.

5

officers did not reasonably believe he was the person named in the warrant.

Carrillo contends that given the information the officers received from him, a reasonable officer would have investigated further and concluded that he was not the person wanted on the warrant. He cites, among other things, the copy of the court order that he says he presented to the officers that said he was not to be arrested on the Bucio warrant. Carrillo also says that if the officers had investigated further via the LEADS system, they would have learned that Bucio was already in custody and thus that Carrillo could not be the person listed in the warrant.

In *Brown v. Patterson*, 823 F.2d 167, 169 (7th Cir. 1987), the Seventh Circuit concluded that an officer acted reasonably when he executed a warrant against the wrong individual because that person's name matched an alias used by the suspect described in the warrant, and he was also the same race and age as the suspect. The facts in *Brown* are similar to the undisputed facts in this case. Carrillo's first and last name matched aliases listed in the warrant for Omar Bucio, and Carrillo's date of birth matched one of the birth dates listed in the warrant. Carrillo was also within one inch of the height of the suspect named in the warrant. In addition, Carrillo was "driving on a ticket" due to a pending DUI charge; a DUI charge was the basis for the warrant the officers found via their computer.

No reasonable jury could find these circumstances insufficient to give a reasonable officer probable cause to arrest. As the Seventh Cirucit has stated, "the peril of liability under section 1983 should not be placed upon arresting officers every time they are faced with the practical dilemma of arresting or releasing an individual who, despite some discrepancies in description, they reasonably believe to be the

6

intended subject of an arrest warrant." *White v. Olig*, 56 F.3d 817, 820 (7th Cir. 1995) (internal quotation marks and citations omitted).

Carrillo argues that the officers should have investigated further, particularly because he gave them a copy of a court order from a DuPage County judge stating that he was not to be arrested on the Bucio warrant. This does not undermine the existence of probable cause. There is no indication that what Carrillo gave the officers was a certified copy of a court order. Given that circumstance, "[j]udgments as to the authenticity of [court] orders, which like all other documents are subject to error, alteration, and forgery, are ordinarily best made in the station house or the courthouse, rather than by a police officer in the field." *Lauer v. Dahlberg*, 717 F. Supp. 612, 614 (N.D. Ill. 1989) (concerning a warrant recall order).

The information the officers had at the scene gave them a proper basis to take Carrillo into custody based on the warrant and take him to the police station, but did it permit them to keep him in custody after that? At the station, Swiatkowski contacted the Illinois Law Enforcement Agencies Data System (LEADS) and was told by an officer there that the warrant was still active. The LEADS officer faxed the Chicago Police Department a document that listed information about the person named in the warrant. *See* Defs.' Ex. B. It named the person as Omar Bucio and gave the following identifying information: white male, date of birth July 11, 1976, height five feet six inches, weight 165 pounds, brown hair, brown eyes, medium complexion, tattoos on the abdomen, left arm, and right arm. It also listed "aka's" of Omar Bucio-Carrillo, Omar Bucio-Corrilo, Omar Busio, Omar Busio Carrillo, Omar Carrillo-Bucio, and Ramiro Moreno, and "alias" dates of birth as May 11, 1975, November 29, 1975, and December

22, 1977. Carrillo's birth date is December 22, 1977; he is five feet seven inches tall (only one inch different from what the LEADS information showed); his race is listed as white; and he has brown eyes. Carrillo has a tattoo, though there is insufficient information regarding where it is and no indication he has three tattoos. His middle initial is "D," but what is noteworthy is that one of the aliases on the warrant included the first name Omar and the last name Carrillo.

If information from LEADS had shown or indicated there was no reasonable basis to believe Carrillo was the person named in the warrant, there would have been no basis for defendants to continue to hold Carrillo. In *Phelan v. Village of Lyons*, 531 F.3d 484 (7th Cir. 2008), police officers stopped and arrested the plaintiff after they typed into the LEADS system the license number of the car she was driving and received a report of a stolen vehicle. They overlooked or ignored, however, information contained in the LEADS report that indicated the vehicle said to be stolen was a black motorcycle, not a white automobile, which was what the plaintiff was driving. The Seventh Circuit concluded probable cause was lacking and there was no qualified immunity, because the officers could not ignore information that was in front of them that undermined probable cause. *Id.* at 488-90.

That was not the case here. To be sure, the information the officers obtained from LEADS did not definitively establish that Carrillo was the person named in the warrant, but it provided a reasonable basis to believe he was that person, despite the existence of some discrepancies. Carrillo argues not that the officers ignored information in the LEADS report but rather that they should have investigated further due to his protestations of innocence and the fact that he had a copy of what purported

8

to be a court order saying he was not to be arrested on the warrant.

In *Catlin v. City of Wheaton*, 574 F.3d 361 (7th Cir. 2009), the Seventh Circuit stated that arresting officers in a false-identity case "are required to show only the *reasonableness* of their belief that the person they arrested was the person they were seeking; they are not required to show that they knew *with certainty* that the person they arrested was the person they were seeking. Often, there will have been more that an officer could have done to confirm a suspect's identity. This will not render an arrest unconstitutional so long as the officer's actions were reasonable under the circumstances." *Id.* at 366 (emphasis in original). Though the court in *Catlin* seems to have flipped the burden of proof – a plaintiff in a false arrest case must prove lack of probable cause; the defendant is not required to disprove it – these same comments apply here. Investigating Carrillo's claims would have required the defendant officers to contact DuPage authorities (perhaps even the clerk of court) to confirm the authenticity of Carrillo's court order, and to check other sources regarding Bucio's identity. The Fourth Amendment did not require the defendants to do this (even if they had, there is no way to say the information they would have obtained would have undercut the matching information they already had). Under the circumstances, no reasonable jury could find the officers acted unreasonably in arresting Carrillo and keeping him in custody.

**C.     Substantive due process claim**

Defendants are also entitled to summary judgment on Carrillo's substantive due process claim, which concerns his seizure and detention pursuant to the Busio warrant.

9

"[W]here 'actions fall[ ] clearly within the ambit of those activities regulated by the Fourth Amendment,' the Fourth Amendment provides the appropriate standard for evaluating the claim, and 'there [i]s no need for the district court to further analyze the case under the strictures of the Fourteenth Amendment.'" *Belcher v. Norton*, 497 F.3d 742, 754 (7th Cir. 2007) (quoting *Kernats v. O'Sullivan*, 35 F.3d 1171, 1182 (7th Cir. 1994)). Defendants are therefore entitled to summary judgment on Carrillo's substantive due process claim.

### D. Willful and wanton conduct claim

Carrillo argues that the officers' failure to investigate his claims of mistaken identity amounted to willful and wanton conduct on the part of the officers. The Illinois Appellate Court has held that "[w]illfull and wanton conduct is a course of action that either is intentional or 'shows an utter indifference to or conscious disregard for the safety of others or their property.'" *Mercado v. Village of Addison*, 385 N.E.2d 1006, 1009, 898 N.E.2d 1089, 1092 (2008) (quoting 745 ILCS 10/1-210). In *Mercado*, because the arresting officers had a warrant and a reasonable belief that the person they were arresting was the person named in the warrant, the arrest did not amount to willful and wanton conduct. *Id.* Swiatkowski and Kuc are entitled to summary judgment on this claim for the same reasons they are entitled to summary judgment on Carrillo's section 1983 claim.

### E. Respondeat superior and statutory indemnification claims

The City, whose liability is derivative of that of the officers, is entitled to summary judgment with respect to the claims on which the Court has granted summary judgment

10

in favor of the officers, but not otherwise.

## Conclusion

For the reasons stated above, the Court grants defendants' motion for summary judgment in part and denies it in part [docket no. 56]. Plaintiff's claim concerning the initial stop by the police remains for trial.

                                                                         _____
                                                                         MATTHEW F. KENNELLY
                                                                         United States District Judge

Date: August 30, 2010