# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| OMAR CARRILLO, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 09 C 2803 |
| CITY OF CHICAGO, BRIAN SWIATKOWSKI, and LAURA KUC, | ) ) ) ) ) | Magistrate Judge Daniel G. Martin |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Omar Carrillo's Motion to Reconsider Defendants' Motion in Limine to Bar Evidence of Events After Discovery of the Arrest Warrant [133]. For the reasons stated below, the motion is respectfully denied.

### I. Background

This civil rights action, brought under 42 U.S.C. § 1983, arises out of a traffic stop of Omar Carrillo near 6800 S. Damen Avenue in Chicago for allegedly violating four traffic laws and subsequent arrest by Chicago police officers Brian Swiatkowski and Laura Kuc. The following facts are taken from District Judge Matthew Kennelly's August 30, 2010 opinion on defendants' summary judgment motion.

On December 9, 2008, Swiatkowski and Kuc stopped Carrillo for an alleged traffic violation while he was driving on South Damen Avenue in Chicago. When the officers asked for Carrillo's driver's license, he informed them that he was "driving on a ticket," and he presented the ticket and his state-issued identification card. The officers checked Carrillo's name via computer and found an arrest warrant for a man named Omar Bucio that listed several aliases, including Omar Busio Carrillo, Omar Bucio-Carrillo, and Omar Carrillo-Bucio. Carrillo's date of birth matched one of the birth dates listed in the warrant. Carrillo was also within one inch of the height of the suspect

named in the warrant. In addition, Carrillo was "driving on a ticket" due to a pending DUI charge, and a DUI charge was the basis for the warrant the officers found via their computer.

The officers told Carrillo about the warrant. Carrillo says he gave the officers an order from a DuPage County circuit judge stating that he was not to be arrested on the warrant in question. According to Carrillo, the officers took the court order from him, tore it up, and make disparaging comments about it. Despite Carrillo's repeated pleas that he was not the person named in the warrant, the officers transported him to the police station. The officers checked the LEADS database and verified the warrant was active. They proceeded to process Carrillo, and other officers later transported him to the Cook County Jail. Jail personnel released Carrillo the next day after he posted bond. Carrillo then appeared before a judge in DuPage County, who released Carrillo and entered an order stating that he was not to be arrested on the warrant again. Carrillo says that on the day he was released from Cook County Jail, he was fired from his job of nine years for violating his employer's strict "no call, no show" policy. Carrillo filed this suit asserting claims of unreasonable seizure, false arrest and imprisonment, violation of substantive due process, and willful and wanton conduct.

Defendants moved for summary judgment on all claims contained in Carrillo's Second Amended Complaint. On August 30, 2010, Judge Kennelly granted in part and denied in part Defendants' summary judgment motion. Carrillo v. City of Chicago, 2010 WL 3463125 (N.D. Ill. Aug. 30, 2010). Specifically, Judge Kennelly concluded that no reasonable jury could find the officers acted unreasonably in arresting Carrillo and keeping him in custody, and therefore, defendants were entitled to summary judgment on Carrillo's false arrest/imprisonment, substantive due process, and willful and wonton conduct claims. However, the district court determined that Carrillo presented sufficient evidence that he did not commit any traffic violations that justified the stop and thus defendants were not entitled to summary judgment "with respect to the initial stop of Carrillo's vehicle and the detention of him up to the time the officers learned of the warrant." Id.

at *3. The district court concluded that Carrillo's "claim concerning the initial stop by the police remains for trial." Id. at *4.

After the ruling on summary judgment, the parties consented to the full jurisdiction of Magistrate Judge Martin Ashman. On June 12, 2012, the case was reassigned to Magistrate Judge Morton Denlow as a result of the death of Judge Ashman. When Judge Denlow retired from the bench, the case was reassigned to the undersigned Magistrate Judge.

Defendants then moved *in limine* to bar Carrillo from introducing any evidence and mentioning in the presence of the jury any events after defendant officers first learned that a warrant was associated with Carrillo's name. In its original ruling, the Court considered and found helpful the cases of United Sates v. Johnson, 383 F.3d 538, 546 (7th Cir. 2004) and United States v. Green, 111 F.3d 515, 521-23 (7th Cir. 1997), which hold that a lawful arrest based on an outstanding warrant constituted an intervening circumstance which sufficiently attenuated the casual connection between an unlawful traffic stop and the procurement of evidence so as to dissipate any taint caused by a traffic stop that lacked reasonable suspicion. Applying the same concept to the legal causation necessary for compensatory damages in this constitutional tort case brought under 42 U.S.C. § 1983, the Court concluded that on his illegal traffic stop claim, Carrillo is not able to recover damages for events occurring after the defendant officers learned of the active arrest warrant associated with Carrillo's name, including his arrest, subsequent one night detention, and job loss due to his detention.

Carrillo makes much of the fact, in his motion to reconsider, that the Court considered Johnson and Green and argues that criminal cases involving the exclusionary rule provide no guidance as to the standard for recoverable damages in a civil case. Carrillo is of course correct that this is a civil case and the operative standard is the tort principle of proximate cause, not the exclusionary rule. In the end, however, Carrillo fails to demonstrate that in the tort/constitutional arena of this case that the active arrest warrant associated with his name is not an intervening

event which severed any foreseeability of Carrillo's post-arrest damages from defendant officers' alleged unlawful traffic stop.

## II. Discussion

A district court has the inherent authority to reconsider an interlocutory order. See Fed. R. Civ. P. 54(b) (providing that non-final orders "may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities."). The authority of a district judge to reconsider a previous ruling in the same litigation under Rule 54(b) "is governed by the doctrine of the law of the case, which authorizes such reconsideration if there is a compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was erroneous." Santamarina v. Sears, Roebuck & Co., 466 F.3d 570, 572 (7th Cir. 2006). Carrillo's motion to reconsider has been carefully considered, but for the following reasons, the Court finds no compelling reason to disturb its previous ruling.

As recognized in the Court's previous order, "the ordinary rules of tort causation apply to constitutional tort suits." Hezog v. Village of Winnetka, 309 F.3d 1041, 1044 (7th Cir. 2002); see also Malley v. Briggs, 475 U.S. 335, 345 (1986) (stating "§ 1983 'should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions.'"). "Causation constitutes a necessary element in all tort cases. To establish tort liability, the victim must show that the wrongful act of the tort-feasor caused the injury." Hibma v. Odegaard, 769 F.2d 1147, 1155 (7th Cir. 1985). "To be a legal cause of harm to another, a tort-feasor's conduct must constitute a substantial factor in bringing about the harm." Id.

Another basic principle of causation in tort law is that intervening events – also called superseding causes – can break the chain of causation and cut off liability. An intervening force may "relieve a defendant from liability for his wrongful conduct" if that intervening force is "outside of the range of reasonable anticipation as a consequence of the defendants' wrongful conduct." Enis v. Ba-Call Bldg. Corp., 639 F.2d 359, 362 (7th Cir. 1980). The Court applied this principle in

reaching its original decision, explaining that the arrest warrant associated with Carrillo's name was a sufficient intervening cause which broke the causal link from the defendant officers' alleged unjustified traffic stop to Carrillo's damages for arrest, detention, and job loss.

In his reconsideration briefs, Carrillo properly focuses on proximate cause. "The element of proximate cause depends upon the concept of foreseeability." Suzik v. Sea-Land Corp., 89 F.3d 345, 348 (7th Cir. 1996). The relevant question here is whether it was reasonably foreseeable that the complained-of harm (mistaken arrest, one night detention, and job loss due to detention) would befall Carrillo as a result of the allegedly unlawful traffic stop. Carrillo does not contend that the alleged traffic violations provided a basis for his arrest and detention. Thus, to determine whether defendant officers proximately caused Carrillo's complained-of harm, Carrillo must show that his mistaken arrest on a warrant for another person was a foreseeable event to the defendant officers when Carrillo was allegedly illegally stopped. Carrillo has not established that his arrest on a warrant for another person and his post-arrest injuries were an objectively reasonable expected result of an allegedly unjustified traffic stop.

Carrillo argues that it was reasonably foreseeable that he would be arrested pursuant to the warrant because police officers routinely run a warrant check during traffic detentions. It is true that warrant checks are a standard part of all or most traffic stops, United States v. Finke, 85 F.3d 1275, 1280 (7th Cir. 1996), but it does not follow that warrants executed against the wrong individual are a routine and foreseeable part of warrant checks during traffic stops. There is no basis in the record to conclude that an arrest on a warrant for another person is a natural and probable consequence of a questionable traffic stop. On the record here, the Court concludes that Carrillo's mistaken identity arrest was an unexpected consequence of the traffic stop. Because Carrillo's arrest on a warrant that was mistakenly attributed to him was not a normal incident of the risk created by the allegedly questionable traffic stop, the arrest and detention of Carrillo did not follow as a foreseeable consequence of the allegedly unlawful traffic stop.

The Seventh Circuit has applied similar principles in excluding evidence of certain damages where legal causation did not exist in § 1983 cases. In Duncan v. Nelson, 466 F.2d 939 (7th Cir. 1972), the plaintiff brought a §1983 action for deprivation of rights secured by the Fourteenth Amendment claiming that defendants extracted an allegedly involuntary confession from plaintiff. The district court found that the act of the trial judge in admitting the confession was a superseding, intervening cause for which the defendants could not be held liable. The Seventh Circuit affirmed and held that the plaintiff could not recover damages for his conviction and incarceration because "any damage to the plaintiff arising from his conviction and imprisonment was not proximately caused, *i.e.*, was not the natural and foreseeable consequence, of defendants' actions." Duncan, 466 F.2d at 942. The Court noted that the defendants, who knew or should have known that an involuntary confession was inadmissible, would not have foreseen that the trial judge would erroneously admit the unlawful confession. Id. Therefore, the plaintiff's damages were limited to the harm that he suffered as a result of the unlawful interrogation and confession. Id. at 945.

And, in Hibma, the plaintiff brought a §1983 action alleging that defendant deputies entraped and framed him and caused him to be arrested and imprisoned. Hibma, 769 F.2d 1147 (7th Cir. 1985). After the jury determined liability in plaintiff's favor and before the damages phase, the district court granted defendants' motion *in liminie* to exclude evidence of a sexual assault upon the plaintiff by other inmates as irrelevant and unduly prejudicial. Hibma, 769 F.2d at 1154-55. The Seventh Circuit upheld the exclusion of this evidence on the issue of damages because the deputies' actions were not the legal cause of the sexual assault. Id. at 1156. Although the deputies' actions "set in motion the events which led" to the plaintiff's imprisonment, the duty of protection assumed by the prison system and the criminal acts of the other inmates "formed superseding causes which prevent[ed] the deputies' actions from being the legal cause in bringing about the sexual assault." Id.

Similarly, in this case, Carrillo's name being mistakenly linked with an outstanding arrest warrant constitutes an extraordinary circumstance that breaks the chain of causation associated with the defendant officers' allegedly unlawful traffic stop. Even if the initial traffic stop was unjustified, the defendant officers discovered an intervening fact – the outstanding warrant for an individual that used Carrillo's first and last name as an alias. Under these circumstances, the chain of causation was broken by the discovery of the outstanding warrant associated with Carrillo's name.

The cases relied upon by Carrillo do not suggest a different result. In Huddleston v. Pohlman, 2007 WL 647335 (C.D. Ill. Feb. 27, 2007), the plaintiff brought an action pursuant to 42 U.S.C. § 1983 alleging that the defendant arrested him for criminal trespass without probable cause. On his false arrest claim, the plaintiff sought to introduce evidence of damages he incurred because of the bond restriction prohibiting him from traveling out-of-state. Defendant asserted that "the State's Attorney's decision to charge Plaintiff and Plaintiff's failure to petition the Court to remove the travel restrictions were intervening events that proximately caused any damages related to Plaintiff's inability to leave the state, breaking any causal link to Defendant's conduct." Id. at *2. The district court denied defendant's motion *in limine* seeking to bar evidence relating to damages incurred because of the bond restriction on out-of-state travel because it was reasonably foreseeable to the defendant arresting officer that his arrest of plaintiff would likely result in criminal charges being filed and plaintiff being placed on bond restrictions. Id. at *3. Unlike Huddleston, it was not reasonably foreseeable to the defendant officers that their allegedly unlawful traffic stop of Carrillo would likely result in his mistaken arrest on a warrant for another person and subsequent overnight detention and job loss.

Webb v. Amato, 210 F.Supp.2d 1015 (N.D. Ill. 2002), cited by Carrillo, is also distinguishable. There, the § 1983 plaintiff alleging false imprisonment was allowed to seek damages arising from injuries while incarcerated from the arresting officers. The arresting officers

allegedly knew of plaintiff's preexisting heart condition, removed his heart medication from his apartment when they arrested him, and some time later provided the medication to the lock-up personnel. Id. at 1015. The plaintiff alleged that the stress of the arrest and a delay in receiving his heart medication aggravated his heart condition. He further alleged that a blood thinner he received while incarcerated by a doctor who did not properly review his medical record contributed to his injuries. The defendants argued that the "alleged administration of blood thinner constitutes an intervening superseding cause, breaking any possible link to their conduct." Id. at 1016. The district court denied defendants' motion *in limine* to bar evidence of plaintiff's medical injury sustained after he left their custody and control.

Unlike the arresting officers in Webb who allegedly knew about the plaintiff's heart condition and delayed his receipt of it in the lock-up, there is no indication here that defendant officers specifically targeted Carrillo for anything other than the alleged traffic violations or that defendant officers made the stop for the purpose of mistakenly arresting Carrillo. There is also no suggestion that the arrest warrant associated with Carrillo was previously known to the defendant officers or that they knew the arrest warrant associated with Carrillo's name was for another person. Rather, the record reflects that the defendant officers first discovered the outstanding arrest warrant associated with Carrillo following the traffic stop unrelated to the warrant.

Likewise unavailing is Carrillo's citation to Moore v. Marketplace Restaurant, Inc., 754 F.2d 1336 (7th Cir. 1985). In Moore, the Seventh Circuit reversed the district court's grant of summary judgment on the plaintiffs' lack of probable cause to arrest claim under the Fourth Amendment. In his separate opinion, Judge Posner explained that if the arrest leading to the detention was unlawful, the police are responsible for all foreseeable consequences of the arrest, including a prolonged detention, regardless of whether or not the detention was unreasonable in and of itself. Id. at 1359. According to Carrillo, Moore mandates that Defendants' motion *in limine* be denied. Carrillo contends that if the jury finds the initial traffic stop unconstitutional, the Defendants are

liable "for any resulting detention, 'whether or not that detention was unreasonable in and of itself.'" (Doc. 133 at 4). Carrillo goes on to state that "[i]t simply doesn't matter that the arrest on the warrant was not a constitutional violation. An injury does not have to be a constitutional violation for it to be recoverable as damages." Id.

Carrillo's application of Moore is not persuasive. Moore involved a viable false arrest claim, not an allegedly unjustified traffic stop. As Carrillo recognizes, "Judge Kennelly has already ruled that Plaintiff Carrillo does not have a cause of action for false arrest pursuant to the warrant." (Doc. 133 at 2). The foreseeability of a detention following an invalid arrest is not the same as the foreseeability of an arrest and detention on an outstanding arrest warrant for another person following a questionable traffic stop.

Again, the pertinent issue here is whether it was reasonably foreseeable that Carrillo would be arrested and detained on active warrant for another person after an allegedly unlawful traffic stop. Carrillo is silent on this issue. Carrillo bases his application of foreseeability on the fact that police officers routinely run a warrant check during traffic detentions and that he told the defendant officers that the warrant did not apply to him. From these two facts, Carrillo implies that his arrest pursuant to the warrant for another person was foreseeable and he should be able to recover damages for his arrest, subsequent detention, and job loss due to the detention. These facts are insufficient to establish foreseeability. The fact that police officers routinely run a warrant check during traffic detentions does not imply that it was reasonably foreseeable to the defendant officers that the outstanding warrant associated with Carrillo was for another person, despite Carrillo's protests of mistaken identity. It is not uncommon for the subject of a warrant to claim the warrant is for another person. Brown v. Patterson, 823 F.2d 167, 169 (7th Cir. 1987) (stating in mistaken arrest case, "[t]he fact that Brown denied being Moseley was only to be expected, even if Brown was Moseley."). Consequently, Carrillo's protests of mistaken identity do not undermine the conclusion that Carrillo's arrest on a warrant for another person and subsequent detention and job

loss were not a reasonably foreseeable result of the questionable traffic stop.

Carrillo's citation to Gordon v. Degelmann, 1993 WL 286470 (N.D. Ill. July 28, 1993), is equally unconvincing. In Gordon, the plaintiff sued defendants for false arrest for criminal trespass to plaintiff's girlfriend's home. The day after the plaintiff was arrested, his girlfriend obtained an emergency protective order that prevented the plaintiff from entering the home. A judge later modified the protective order granting the plaintiff some access to the house and dismissed the criminal charges. Before trial, defendants moved *in limine* to exclude evidence of lodging, food bills, and other expense items incurred by the plaintiff, arguing that these damages were independently caused by the unrelated entry of a protective order against the plaintiff the day after the arrest. The district court denied the defendants' motion to exclude, stating only that "[u]nder these circumstances, proximate cause is a question for the jury." Id. at *6.

If the evidence permits only one reasonable conclusion on the issue of proximate cause, the existence of an intervening cause which breaks the causal line between the tort-feasor's act and the harm to the plaintiff is an issue of law properly resolved by the court:

> The court has the exclusive function to declare the existence or non-existence of rules, such as those pertaining to superseding causes, which restrict the responsibility of a tort-feasor short of making him liable for harm of which his actions are a legal cause. If the facts are undisputed, the court has the duty to apply to them the rules of determining the existence or extent of the tort-feasor's liability.

Hibma, 769 F.2d at 1156. In this case, Carrillo has not offered evidence creating a jury issue as to whether his post-arrest injuries were a foreseeable consequence of the allegedly unlawful traffic stop. The Court therefore concludes that the outstanding warrant mistakenly associated with Carrillo constituted a superseding intervening cause for his arrest, overnight detention, and later job loss. Id. (holding trial court properly determined whether evidence of sexual assault should be considered by the jury where the relevant facts were undisputed and "reasonable men could not differ as to whether the sexual assault was an intentional act and as to whether the duty to protect Hibma had sifted to the Wisconsin Prison System.").

Finally, the Court rejects Carrillo's attempt to analogize his case to the well-known case involving Christina Eilman, which was recently settled by the City of Chicago for $22.5 million. Eilman was a California woman who was arrested and then "released alone, at night, without any protection, money or a phone, into a high crime neighborhood that the officers knew to be a high crime neighborhood during a time when she was in a weakened mental state not capable of full mental functioning in order to protect herself." Paine ex rel. Eilman v. Johnson, 689 F.Supp.2d 1027, 1082 (N.D. Ill. February 22, 2010). Eilman was subsequently kidnaped and raped before falling from a seventh-floor window of a housing project nearby. Carrillo asserts that the City of Chicago "probably had a decent argument about damages being cut off because of the superseding criminal acts of third parties. But that wasn't going anywhere, so they settled." (Doc. 138 at 5).

With regard to proximate cause, the crucial difference between this case and Eilman's case is that Eilman presented evidence, in the form of expert testimony, creating a genuine issue of material fact as to whether her injuries were a foreseeable consequence of the defendant officers' conduct. In Eilman's case, the defendants claimed that the rapist's "actions constituted an intervening force that severed any foreseeability of Eilman's injuries from their failure to provide access to psychological care." Paine, 689 F.Supp. 2d at 1080. The district court denied summary judgment on Eilman's failure to provide care claim because Eilman's experts "testified that the general type of injury sustained by Eilman was foreseeable given her mental condition at the time." Id. Relying on Eilman's criminology expert, the district court also found summary judgment on legal causation inappropriate on the issue of whether defendant officer Heard's conduct was the proximate cause of Eilman's injuries by increasing her risk of injury. Id. at 1081-82. Eilman's criminology expert opined that the fact that Eilman was a young white woman being released into a predominately black, poor neighborhood "combined with Eilman's lack of familiarity with her surroundings and apparent vulnerability, put her at a much greater risk of predatory victimization."

-11-

Id. at 1082. Eilman's criminologist also testified that in the year that Eilman was victimized, the community areas where Eilman was released had the highest rates of criminal sexual assault of all community areas in Chicago. Id. The defendant officers assigned to those areas, including officer Heard, therefore knew of the increased risk Eilman faced when she was released and directed into a high crime neighborhood at night. Id. According to the Seventh Circuit, the police officer defendants "might as well have released [Eilman] into the lion's den at the Brookfield Zoo." Paine v. Cason, 678 F.3d 500, 510 (7th Cir. 2012). In this case, by contrast, Carrillo submitted no evidence showing that defendant officers' allegedly questionable traffic stop might foreseeably lead to his arrest on a warrant for another person. Although defendant officers might have known or foreseen at the time of the traffic stop that they would run a warrant check on Carrillo, no evidence indicates that they knew the outstanding warrant was mistakenly attributed to Carrillo.

Because the record fails to establish the foreseeability element of proximate cause, defendant officers cannot be held responsible for harm caused by Carrillo's mistaken arrest, detention, and job loss. Carrillo's arrest and subsequent detention and job loss are therefore irrelevant for purposes of assessing his damages for the allegedly defective traffic stop.

### III. Conclusion

Carrillo's Motion to Reconsider the Decision Granting Defendants' Motion in Limine to Bar Evidence of Events After Discovery of the Arrest Warrant [133] is denied.

**E N T E R :**

*[signature: Daniel G. Martin]*

**Daniel G. Martin**
**United States Magistrate Judge**

**Dated: March 8, 2013**